## BROWN *vs.* DRIGGERS *et al.*

. Proof being made by complainants of the loss of the original homestead papers by depositions of the head of the family, and of the clerk of the superior court and ordinary, a certified copy from the clerk's office was properly admitted.

2. The defendant having purchased, with the approval of the ordinary and knowledge of the homestead title which he bought, will not be heard to attack the homestead papers for want of regularity in the petition or plat, or in regard to the surveyor who acted in laying off and returning the homestead.

3. The verdict on the subject of the *bona fide* character of the purchase being inconsistent with itself and uncertain in its meaning, no valid decree can be rendered thereon on the vital point in the case; the constitution of 1877 (article 9, section 8) having ratified and confirmed all *bona fide* purchases of homesteads, where the forms of law were complied with.

Homestead.   Evidence.   Verdict.   Before Judge TOMPKINS.   Bulloch Superior Court.   March Term, 1878.

Mrs. Driggers and her children filed their bill against Brown. They alleged that in the life-time of Driggers (since deceased) a homestead was set apart to himself and family; that Brown wanted the place, and induced Driggers to consent to sell by various means, especially by the use of undue influence over him while intoxicated; that he coerced his wife to sign with him the deed to Brown by the use of threats, etc.; and that Brown knew this when he bought. The object of the bill was to cancel the deed to Brown and recover the property.

The answer denied all the material allegations in the bill, set up that Brown was a *bona fide* purchaser for value, and denied that any valid homestead had been set apart.

The case was submitted to the jury for a special verdict.

They found that the property was a homestead; that it had been conveyed by Driggers and wife to Brown; that he used no fraud or unlawful means to effect the sale, but was a *bona fide* purchaser for value; that Mrs. Driggers signed the deed through fears of violence from her husband, and that Brown knew of this. The chancellor decreed a can-cellation of the deed to Brown. He moved for a new trial on the following, among other grounds:

1. Because the verdict was contrary to law and the evidence.

2. Because the verdict did not warrant the decree.

3. Because the court admitted in evidence a certified copy of the homestead proceedings of Driggers. [Mrs. Driggers, the ordinary, and the clerk of the superior court, testified that they had searched and been unable to find the original, and thereupon the chancellor admitted a certified copy from the clerk's office.]

The motion was overruled, and defendant expected.

For the other facts see the opinion.

R. E. LESTER; A. B. SMITH, for plaintiff in error, cited as follows: On admission of evidence, 60 *Ga.*, 114. On *bona fides*, Const. 1877, art. 9, sec. 8; Supplement to Code, §696.

P. W. MELDRIM, for defendants, cited, on admission of evidence, Code, §2009; acts 1877, p. 18; 60 *Ga.*, 114. That sale was void, 55 *Ga.*, 383.

JACKSON, Justice.

When this case was here before, reported in 60 *Ga.*, 114, it was sent back solely because the homestead papers were improperly admitted in evidence, and complainants' case broke down on that point; this court holding that the cer-tified copy of the plat of homestead from the office of the clerk of the superior court was not primary evidence of the homestead, but that the original, which ought to be in the possession of complainants, must first be accounted for.

1. On this trial the loss of the original is sufficiently accounted for by the oaths of Mrs. Driggers, and the ordinary and clerk, and the plat of the homestead estate was properly admitted.

2. It is now objected, however, that the proceedings were so irregular as not to pass title into Mrs. Driggers, and that therefore the papers should have been rejected as evidence, or the court should have charged that the homestead element was not in the way of the defendant's purchase of the land.

But the answer is that he purchased it as homestead, which fact appears from the approval of the ordinary and the facts of the case as contained in the record. In such a case the defendant cannot attack the proceedings for irregularity, as decided in the case of *Long vs. Bullard*, 59 *Ga.*, 355.

3. In respect to the *bona fides* of Brown in the purchase of the land from Driggers and wife, the verdict of the jury is directly in conflict with itself. In answer to one question they say that the purchase was in good faith from husband *and wife;* in answer to another, they say that Brown *knew* that Driggers coerced his wife to sign the deed. These answers seem to us to be contradictory. Brown could not have purchased from Mrs. Driggers in good faith and have known at the time that she was coerced by her husband to sign the deed, and did sign it under duress. Yet the jury find both to be their verdict—both to be the truth. Both cannot be the truth ; therefore, both answers cannot make an intelligent and consistent verdict ; and no valid decree or judgment can follow and conform to such a verdict. The decree having no solid and uniform base on which to rest, is built upon sand and must fall.

It will be observed that the *bona fides* of Brown in the purchase is vital to the case. If he used, or was cognizant of the use of fraud, or deceit, or duress, to induce Mrs. Driggers to sign the deed, he is not a *bona fide* purchaser ; if he was innocent of all participation in such duress, and ignorant of it all, he is a *bona fide* purchaser. If a *bona fide* purchaser, the constitution of 1877, article 9, section 8,

if it be a valid law, protects him in his purchase. That article is as follows:

"Rights which have become vested under previously existing laws shall not be affected by anything herein contained. In all cases in which homesteads have been set apart under the constitution of 1868, and the laws made in pursuance thereof, and a *bona fide* sale of such property has been subsequently made, and the full purchase price thereof has been paid, all right of exemption in such property by reason of its having been so set apart, shall cease in so far as it affects the right of the purchaser. In all such cases, where a part only of the purchase price has been paid, such transaction shall be governed by the laws now of force in this state, in so far as they affect the rights of the purchaser, as though said property had not been set apart."

This section means, we think, first, that homesteads set apart under the constitution of 1868, and still in the possession of the family and unsold, shall remain vested in the family; secondly, homesteads sold under the laws made under the constitution of 1868 to a *bona fide* purchaser who has paid full price for the property, are no longer exempted as homesteads so that the family can recover them, but the title by virtue of the constitution of 1877 is assured to the *bona fide* purchaser, thus buying under the forms of law and paying full price; thirdly, where only part of the purchase money has been paid by the purchaser of the homestead, equity will do in the case what equity would have done had there been no homestead sold but only an ordinary unencumbered estate.

We do not see why the people of Georgia, in convention assembled to frame an organic law, had not the power to make this law and put it in the fundamental law of the state. We know of no restriction upon the powers of such a convention except those imposed by the constitution of the United States; and we are not aware of any restriction upon the states in that instrument which would debar them from making such an organic law. The power of the legislature of a state to pass such an act is quite distinct.

from that of the convention of the people met to make a constitution. The constitution of 1868 would have controlled and curtailed the powers of the legislature assembled under it, and every restriction with which that constitution tied them would have prevented freedom of action in moulding laws; but upon the people, met in convention in 1877 to make a new constitution, the old one of 1868 had no fetters for their free limbs.

It follows, therefore, that if Brown paid full price for this land (and about that there seems to be no question), and if he had no knowledge of the duress under which Mrs. Driggers is said to have acted, having been coerced by her husband to sign away her rights, and if the sale met the approval of the ordinary, (about which also there is no doubt, as the ordinary attested the deed to Brown and wrote it, and it had his full sanction), then article 9 and section 8 of the constitution of 1877, protects his title. Upon the question whether he had or had not knowledge of the duress of the wife, and thus whether he was or was not *bona fide* a purchaser, the jury found both ways, and thus made no verdict either general or special.

The constitution of 1877, it will be seen, requires of the purchaser two things before he can be protected; first, that he has paid "the full purchase price," and secondly, that he bought *bona fide*. The words *bona fide*, therefore, do not mean the payment of the full purchase money, but something else; otherwise the two things would not both have been mentioned—what is that something besides the payment of the full price of the land which the words *bona fide* mean? Evidently, it is the absence of all knowledge of fraud, deceit, or coercion—in short of everything which would show bad faith. So that the jury must find the truth on one single issue, and that is, did Brown so buy *bona fide*, being ignorant and innocent of any coercion of the husband exercised on the wife; if so, he is protected; if not, he is not.

Of course, the ordinary's assent under the constitution of 1868 and the laws made thereunder was as necessary as the

wife's consent, and the purchaser must see to it that the wife not only signs the deed freely so far as he is concerned or has knowedge, but that the law in regard to the assent of the ordinary is complied with. Here, as we have said, the ordinary drew the deed and approved it; and this distinguishes this case from *Rosser vs. Cheney,* decided at the last term.

On the whole case, we are of the opinion that the new trial should have been granted because the verdict is so contradictory and uncertain that no decree can be built upon it, so as to make one harmonious structure and present a symmetrical record—the decree following the verdict—as the law requires; and therefore we reverse the judgment which refused the new trial.

Judgment reversed.